**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1232
_____

In re: SUSAN M. BOLTZ-RUBINSTEIN, Debtor

SUSAN M. BOLTZ-RUBINSTEIN,
                                    Appellant

v.

BANK OF AMERICA, N.A.;
NATIONAL RESIDENTIAL ASSETS CORP., as servicer
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-04628)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 13, 2022.

Before: AMBRO, BIBAS, and ROTH, *Circuit Judges*

(Filed: February 14, 2022)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Bankruptcy automatically stays debt collection, giving bankruptcy judges time to work out repayment plans. But they can make exceptions to the stay, letting particular creditors try to recover their debt while proceedings are pending.

A bankruptcy judge did that here. The bankruptcy filing triggered the automatic stay, but the judge exempted a creditor. After that, the creditor's agent resumed trying to collect a debt. Now the debtor claims that the supposed agent was not in fact an agent of the creditor and thus not exempt from the stay. But she is wrong: the evidence shows that it was an agent, so the creditor was free to use it. Besides, any violation of the stay caused no harm. So we will affirm.

## I. BACKGROUND

Susan Boltz-Rubinstein got a home mortgage from Bank of America. But after falling behind on her payments, she filed for a Chapter 13 consumer bankruptcy. Her filing triggered the automatic stay, stopping creditors from collecting her debts. 11 U.S.C. § 362. Yet the Bank kept mailing her about the delinquent loan. She sued the Bank, claiming that these letters violated the automatic stay. *Id.* § 362(k).

But the Bank has a good excuse. It could keep trying to collect the debt, it argues, because it was exempt from the stay. To understand that argument, we must look at the nuts and bolts of its mortgage business.

### A. Bank of America's mortgage business

To get cash up front from its mortgages, the Bank had signed a forward-flow agreement with Bank of New York Mellon. Under that deal, Bank of America would extend and

2

service mortgage loans, contacting borrowers and collecting payments. For its part, Mellon paid the Bank an upfront fee in return for an income stream from the mortgage payments.

If borrowers defaulted on their mortgages, the Bank would handle foreclosure. Then, right before starting a foreclosure, it would assign a defaulting mortgage to Mellon's subsidiary, the National Residential Assets Corporation. That let Mellon recoup its investment: as soon as the foreclosure was done, Mellon (through National) would take title to the foreclosed property.

But when foreclosure proceedings dragged on, mortgages would stay on National's books longer than expected. That happened to Boltz-Rubinstein. When she declared bankruptcy, National took title to her mortgage. To recover the property, National moved for and got an exemption from the automatic bankruptcy stay.

That brings us up to speed. After the bankruptcy judge granted relief from the stay, the Bank sent the disputed letters to Boltz-Rubinstein. She sued, and the Bank claimed that it was exempt from the stay.

**B. Bank of America's effort to foreclose on Boltz-Rubinstein's home**

Now the heart of the dispute: Everyone agrees that National had an exemption from the stay. But they disagree about whether the Bank did too.

The bankruptcy judge ruled for the Bank, finding that it was also exempt as National's loan-servicing agent. Even if it were not, the judge reasoned, the letters did not cause Boltz-Rubinstein any harm. The District Court affirmed, agreeing that the Bank was exempt as National's agent.

3

The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(1), the District Court reviewed under § 158(a), and we review under §§ 158(d) & 1291. We examine the bankruptcy court's factual findings for clear error. *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). And we review both its conclusions of law and the District Court's order de novo. *Id.*

## II. THE BANK WAS EXEMPT FROM THE AUTOMATIC STAY

If the Bank was National's agent, it was exempt from the stay. The District Court held that it was because the Bank serviced loans for National. Boltz-Rubinstein attacks that holding three ways, but each shot misses.

### A. The bankruptcy judge's agency analysis was sound

Boltz-Rubinstein charges the bankruptcy judge with both misstating the agency-law rule and lacking enough evidence to apply it. But the judge got both points right.

*1. The judge applied the right rule.* Boltz-Rubinstein says the judge overlooked the "touchstone" of agency: the principal's right to control the agent. Appellant's Br. 31–32; Restatement (Second) of Agency § 14 (1958). Not so. The judge asked whether the Bank was "subject to the principal's control." App. 44. So he analyzed whether National "permitted and expected" the Bank to service its mortgages. App. 45–47.

Boltz-Rubinstein says that is the wrong question. National is a holding company without staff that "doesn't really do anything," so it could never control the Bank. Appellant's Br. 36 (quoting App. 465). Yet what matters is not exercising control but the *right* to control. Restatement (Third) of Agency § 1.01 cmt. c (2006). And that was the bankruptcy judge's focus here. Besides, holding companies are often principals and routinely depend on their agents for day-to-day operations. *See* Appellees' Br. 32.

4

*2. The evidence supported finding agency.* Boltz-Rubinstein also questions the factual support for the judge's agency finding. But he relied on enough evidence, though it was complex.

To find agency, courts may reasonably rely on "a definite course of dealing" and other "attending circumstances." *Yezbak v. Croce*, 88 A.2d 80, 82 (Pa. 1952) (internal quotation marks omitted). That is what the bankruptcy judge did. He found that National's then-president, Ann Golio, testified "knowledgeabl[y] and credibl[y]" that the Bank was National's agent. App. 35. We defer to that credibility finding unless it was irrational. *In re Graves*, 33 F.3d 242, 246, 251 (3d Cir. 1994); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 254 (3d Cir. 2005). Because it was not, we defer.

True, Golio's testimony was "somewhat contradictory." App. 35–36. But that was only because National's relationship with the Bank worked differently in practice from how it was designed. By design, the Bank would assign delinquent mortgages to National so National could gain title after a speedy foreclosure. The Bank's obligation to service mortgages was supposed to end then. But in practice, if foreclosure was delayed and the mortgages stayed on National's books, the Bank would keep servicing them for National *as its agent*.

Though unconventional, this practice was a "definite course of dealing, undertaken by the [Bank] and accepted by [National]." *Yezbak*, 88 A.2d at 82. As Golio testified, National and the Bank did business this way at least fifty times, and National never once objected. Indeed, in other court proceedings, National presented the Bank as its loan servicer. Golio's

5

uncontradicted testimony sufficiently supports the bankruptcy judge's finding of an agency relationship.

### B. The District Court found no new facts, and any error would be harmless

Boltz-Rubinstein also argues that the District Court mischaracterized the record, injecting its own factual findings. As she points out, if the District Court had to mischaracterize the record in order to affirm, we should be concerned. *Universal Minerals Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir. 1981). But the District Court *did not* mischaracterize the record. And even if it had, it affirmed the bankruptcy court's supportable factual findings.

Boltz-Rubinstein points to two supposed mischaracterizations. First, the District Court said, "[National] recorded the assigned mortgage from [the Bank] on January 10, 2011." App. 15 n.6. She says this gets the details wrong. But the parties stipulated to those details, and the record includes that mortgage assignment.

Second, before that assignment, the Bank retained the mortgage. The court characterized this retention as "intended to be in a custodial capacity only." App. 19 n.9. Boltz-Rubinstein counters that only the "records and documents" of the mortgage would be kept custodially. Appellant's Br. 27 (quoting App. 113) (emphasis omitted). But that is no contradiction. Mellon beneficially owned the mortgage, receiving the stream of mortgage payments, while the Bank held title to the mortgage *instrument* and acted as loan servicer. And Golio testified to this effect.

Even if the District Court had misstated anything, that error would have been harmless. The court did not substitute its views for those of the factfinder but affirmed the bankruptcy

6

decision. We look through the District Court's opinion to review the bankruptcy judge's factual findings. Because Boltz-Rubinstein identifies no error in those factual findings, there is no reason to reverse.

### III. IN ANY EVENT, BOLTZ-RUBINSTEIN SUFFERED NO DAMAGES

What is more, Boltz-Rubinstein cannot show that any violation of the stay harmed her. To recover damages, she "must be 'injured' *by* the stay violation." *In re Aleckna*, 13 F.4th 337, 346 (3d Cir. 2021) (emphasis added); 11 U.S.C. § 362(k)(1). Yet she was not. The only "actual damages" she sustained (lost wages) were inflicted long after the stay ended, during foreclosure litigation in 2018. But by then her bankruptcy had been discharged, ending the stay. Thus, her lost wages were not "actual damage[]" caused by the foreclosure letters sent two years earlier. *Cf. In re Aleckna*, 13 F.4th at 346 (dictum contemplating recovery for litigation-related costs "when they are incurred to enjoin *further* violations of the stay" (emphasis added, internal quotation marks omitted)).

\* \* \* \* \*

Boltz-Rubinstein loses twice over: Bank of America was National's loan-servicing agent, and the stay violation did not harm her. So we will affirm.